**B & G ENTERPRISES, LTD.,**
**Plaintiff–Appellant,**

v.

**UNITED STATES, Defendant–Appellee.**

No. 99–5114.

United States Court of Appeals,
Federal Circuit.

July 20, 2000.

Rehearing Denied; Suggestion for
Rehearing In Banc Declined
Aug. 22, 2000.

Douglas B. McFadden, McFadden & Shoreman, P.C., of Washington, DC, argued for plaintiff-appellant. With him on the brief was John M. Shoreman.

Mark A. Melnick, Assistant Director, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, argued for defendant-appellee. With him on the brief were David W. Ogden, Acting Assistant Attorney General; and David M. Cohen, Director. Of counsel was Katherine M. Kelly, Attorney. Of counsel on the brief was Karen Wagner, Attorney, Department of Health & Human Services, of Rockville, Maryland. Of counsel was Patricia Kaeding, Attorney, Department of Health & Human Services.

Before LOURIE, CLEVENGER, and LINN, Circuit Judges.

LOURIE, Circuit Judge.

B & G Enterprises, Ltd. appeals from the decision of the United States Court of Federal Claims granting summary judgment against B & G's takings claim. *See B & G Enters., Ltd. v. United States*, 43 Fed.Cl. 523 (1999). We affirm.

### BACKGROUND

In 1992, Congress amended the Public Health Service Act and established the Substance Abuse and Mental Health Services Administration ("SAMHSA") as an agency of the Department of Health and

Human Services ("HHS") and the Center for Substance Abuse Treatment as an agency of SAMHSA. *See* ADAMHA Reorganization Act, Pub.L. No. 102–321, § 101(a), 106 Stat. 323, 325 (1992) (codified at 42 U.S.C. § 290aa (1994)). This legislation also gave the HHS Secretary, acting through the Center for Substance Abuse Treatment, authority to provide block grants to states for the purpose of substance abuse prevention and treatment. *See* 42 U.S.C. § 300x–21(b) (1994). The legislation placed various conditions on a state's entitlement to a block grant, *see id.* §§ 300x–22 to 300x–32, including the requirement that the state "ha[ve] in effect a law providing that it is unlawful for any manufacturer, retailer, or distributor of tobacco products to sell or distribute any such product to any individual under the age of 18," *id.* § 300x–26(a)(1). If a state receiving a block grant did not enact a law prohibiting tobacco sales and distribution to persons under the age of 18, HHS was instructed to reduce that state's grant. *See id.* § 300x–26(c).

In 1993, HHS issued a Notice of Proposed Rulemaking (NPRM) seeking comments on proposed regulations to implement section 300x–26. *See* 58 Fed.Reg. 45156 (1993). HHS proposed to implement this statutory provision by

> requiring States to have in place a law which prohibits the sale or distribution of any tobacco product to persons under the age of 18 through any sales or distribution outlet. This would include such sales or distribution from any location which sells at retail or otherwise distributes tobacco products to consumers including (but not limited to) locations that sell such products over-the-counter or through vending machines.... *Beyond this, the Secretary does not propose specifying the provisions of the States' laws. However, appended to this NPRM is a copy of a model law the States may wish to consider.*

*Id.* (emphasis added). The proposed regulation, 45 C.F.R. § 96.130, provided that to qualify for a block grant a state must have in effect "a law providing that it is unlaw-

ful for any manufacturer, retailer, or distributor of tobacco products to sell or distribute any such product to any individual under the age of 18 through any sales or distribution outlet, including over-the-counter and vending machine sales" and that the state take action to ensure compliance with this rule. *See id.* at 45173. Thus, the proposed regulation merely echoed the language of the statute itself and clarified that it also applied to vending machine retailers. Appended to the NPRM was a "Model Sale of Tobacco Products to Minors Control Act." *See id.* at 45165 (Appendix A). The model act banned all vending machine sales of tobacco. *See id.* Also appended to the NPRM was a report by the Office of Inspector General that discussed some of the ways in which states and localities already limited youth access to tobacco. *See id.* at 45171–72. The report stated in relevant part as follows:

> Restricting tobacco vending machines is the most commonly observed way States and localities limit youth access to tobacco. In addition to their State laws prohibiting the sale of tobacco to minors, 21 States and Washington DC have passed laws that restrict vending machines in some manner.

*Id.* at 45171. The proposed regulation did not make tobacco vending machine restrictions a condition of the receipt of the federal block grant, but the NPRM did *suggest* that states ban tobacco vending machines or restrict their placement in order to limit youth access to tobacco. Proposed regulation section 96.130 was finalized in 1996. *See* 61 Fed.Reg. 1492 (1996).

At the time that section 300x–26 was enacted in 1992, California already had a law in place making tobacco sales and distributions to persons under 18 illegal. *See* Cal.Penal Code § 308(a) (West 1990) ("Every person, firm, or corporation which knowingly sells, gives, or in any way furnishes to another person who is under the age of 18 years any tobacco, cigarette, or

cigarette papers, or any other preparation of tobacco ... is subject to either a criminal action for a misdemeanor or to a civil action[ ]"). In fact, California has made the sale and distribution of tobacco to persons under 18 a criminal offense since 1911. *See* 1911 Cal. Stat. ch. 288, p. 481, § 1.

In 1994, after section 300x–26 was enacted and the NPRM published, California did enact a law restricting, but not banning, the placement of tobacco vending machines. *See* Stop Tobacco Access to Kids Enforcement Act ("STAKE"), 1994 Cal. Stat. 1009 (codified at Cal. Bus.Code §§ 22950–61 (West 1999)). California enacted STAKE in order to "reduc[e] and eventually eliminat[e] the illegal purchase and consumption of tobacco products by minors" and to comply with section 300x–26.[1] *See* Cal. Bus.Code. § 22951. *Inter alia*, STAKE made it unlawful for cigarettes and other tobacco products to be sold, offered for sale, or distributed from vending machines and similar appliances unless the machines were located within an establishment that was licensed to sell alcoholic beverages and the machines were located at least 15 feet from the establishment's entrance, commencing January 1, 1996. *See id.* § 22960. Thus, STAKE did not ban all tobacco vending machines as suggested by the model act in the 1993 NPRM; it only restricted vending machines to establishments that were licensed to sell alcohol.

B & G owns and operates cigarette vending machines located in business establishments in Los Angeles, California, pursuant to contracts with the establishment owners. B & G sued the United States in the United States Court of Federal Claims, alleging that its cigarette vending machine contracts constituted property interests, that it "lost" vending machine contracts when California's tobacco vending machine restrictions went into effect on January 1, 1996, and that this loss constituted an unlawful taking of property by the federal government without just compensation. Specifically, B & G alleged that California's vending machine law is attributable to the federal government because, it asserts, the state was acting as an agent of the federal government when it enacted the law. The government moved for summary judgment that the federal government did not take B & G's property, asserting that California did not act as an agent of the federal government when it enacted the tobacco vending machine restrictions. The Court of Federal Claims granted the government's motion, holding that California did not act as an agent of the federal government when it enacted section 22960, but rather did so voluntarily for its own benefit. *See B & G Enters.*, 43 Fed.Cl. at 528. B & G timely appealed to this court. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(3) (1994).

## DISCUSSION

■ Summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." U.S.Ct. Fed. Cl. R. 56. We review a grant of summary judgment by the Court of Federal Claims *de novo* to determine whether the summary judgment standard has been correctly applied. *See Winstar Corp. v. United States*, 64 F.3d 1531, 1539 (Fed.Cir.1995) (en banc), *aff'd* 518 U.S. 839, 116 S.Ct. 2432, 135 L.Ed.2d 964 (1996). Summary judgment is particularly appropriate here. There are no material facts in dispute. The only issue is legal— whether the Court of Federal Claims properly held that the state of California was not an agent of the federal government

---

1. "California must fully comply with federal regulations, particularly the 'Synar Amendment,' that restrict tobacco sales to minors and require states to vigorously enforce their laws prohibiting the sale and distribution of tobacco products to persons under 18 years of age." Cal. Bus.Code § 22951 (West 1999). The "Synar Amendment" is the popular name for section 300x–26. *See* 144 Cong. Rec. S5702–01, S5728 (June 5, 1998); 142 Cong. Rec. E1863–02 (Jan. 26, 1996).

when it enacted tobacco vending machine restrictions that interfered with B & G's contracts.

■ As a preliminary matter, we understand B & G to argue that it has suffered a regulatory rather than a physical taking, since it does not allege that the federal government physically occupied or destroyed its property,[2] but rather that its vending machine contracts were property rights that were "taken" by federal legislative action. *See Greenbrier v. United States,* 193 F.3d 1348, 1356 (Fed.Cir.1999).

■ The Fifth Amendment provides in relevant part as follows: "nor shall private property be taken for public use, without just compensation." U.S. Const. amend. V, cl. 4. Although the Supreme Court has stated that "[c]ontract rights are a form of property and as such may be taken for a public purpose provided that just compensation is paid," *United States Trust Co. of N.Y. v. New Jersey,* 431 U.S. 1, 19 n. 16, 97 S.Ct. 1505, 52 L.Ed.2d 92 (1977), it has also emphasized that government interference with contractual rights does not necessarily constitute a taking of property:

> Contracts, however express, cannot fetter the constitutional authority of Congress. Contracts may create rights of property, but when contracts deal with a subject matter which lies within the control of Congress, they have a congenital infirmity. Parties cannot remove their transactions from the reach of dominant constitutional power by making contracts about them. If the regulatory statute is otherwise within the powers of Congress, therefore, its application may not be defeated by private contractual provisions. For the same reason, the fact that legislation disregards or destroys existing contractual rights does not always transform the regulation into an illegal taking. This is not to say that contractual rights are never property rights or that the Government may al-

ways take them for their own benefit without compensation.

*Connolly v. Pension Benefit Guar. Corp.,* 475 U.S. 211, 223–24, 106 S.Ct. 1018, 89 L.Ed.2d 166 (1986) (internal quotation marks and citations omitted); *see also Eastern Enters. v. Apfel,* 524 U.S. 498, 118 S.Ct. 2131, 141 L.Ed.2d 451 (1998); *Greenbrier,* 193 F.3d at 1356–57. For purposes of this appeal we accept, but do not decide, that B & G's vending machine contracts may constitute "property." *See Greenbrier,* 193 F.3d at 1357. Even if B & G's contracts are property rights and were affected by the government's actions, we conclude that a taking did not occur.

■ We agree with the government that California did not act as an agent of the United States by enacting the section 22960 vending machine restrictions and that the United States is therefore not responsible for that law's interference with B & G's vending machine contracts as a matter of law. "Agency is the fiduciary relationship which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other to so act." *Restatement (Second) of Agency* § 1(1). There is no manifestation by either the federal government or the State of California of an intent to create an agency relationship under the facts of this case.

■ First, both the Supreme Court and our predecessor court, the United States Court of Claims, have held that the federal government's conditioning a state or locality's receipt of federal funds on the state's taking a particular action does not make that state or locality an agent of the federal government. *See Griggs v. Allegheny County, Pa.,* 369 U.S. 84, 89, 82 S.Ct. 531, 7 L.Ed.2d 585 (1962) (holding that the county government, not the federal government, was liable for the taking of an air easement over plaintiff's property,

---

2. "The government effects a physical taking only where it requires the landowner to submit to the physical occupation of his land."

*Yee v. City of Escondido, Cal.,* 503 U.S. 519, 527, 112 S.Ct. 1522, 118 L.Ed.2d 153 (1992).

even though the airport was funded in part by a federal grant based on compliance with federal regulations); *D.R. Smalley & Sons, Inc. v. United States,* 178 Ct.Cl. 593, 372 F.2d 505, 507 (1967) (holding that the conditional grant of federal funds to Ohio for highway projects did not make the federal government liable for Ohio's acts or omissions). Like the grants in *Griggs* and *D.R. Smalley,* the conditional grant of funds to California did not subject the federal government to liability for California's actions.

 Second, California's legislature cannot be considered to have acted under federal authority. The State of California is an independent sovereign, which itself possesses the authority to enact legislation[3] and thus to regulate the placement of tobacco vending machines, unless preempted by federal law. Before the enactment of section 300-x26, Congress did not regulate the sale of tobacco to minors. Since the field was legislatively unoccupied by the federal government, the states retained the power to so regulate. Section 300x-26(a)(1), by its very terms, does not indicate any preemption of the states' power. Rather, it indicates that Congress did *not* want to itself impose an age restriction on the sale and distribution of tobacco, but rather wanted the states to continue to regulate in this field. *Cf. Campbell v. Hussey,* 368 U.S. 297, 82 S.Ct. 327, 7 L.Ed.2d 299 (1961) (holding that the Tobacco Inspection Act, which imposed uniform standards of classification and inspection of tobacco sold at auction, preempted the field and left no room for the Georgia Tobacco Identification Act, which also imposed tobacco classification regulations). Congress's enactment of section 300x-26, therefore, cannot be construed as a grant of authority for California to pass legislation *on behalf of* the federal government. This is not even a case in which Congress first regulated a particular field and then delegated its authority to regulate that field to another sovereign entity. *See United States v. Mazurie,* 419 U.S. 544, 95 S.Ct. 710, 42 L.Ed.2d 706 (1975) (holding that Congress, which regulated the introduction of alcoholic beverages in "Indian country" could validly delegate to Indian tribes its authority to regulate that subject matter because Indian tribes themselves possessed independent authority over the subject matter). California had, at all times, the inherent authority to enact section 22960. The United States did not delegate to California the authority to enact that law.

Third, this case is distinguishable from those cases in which a state or local official was acting under the authority of a federal order or law. *See Preseault v. United States,* 100 F.3d 1525, 1550 (Fed.Cir.1996) (en banc) (holding that the federal government was liable for a taking of property where City of Burlington acted under federal authority); *Hendler v. United States,* 952 F.2d 1364, 1378-79 (Fed.Cir.1991) (holding that the federal government was liable for a taking of property where California officials, acting under the authority of a federal order, occupied land). The first distinction is that both cases involved a physical occupation, whereas this case does not. Moreover, in each case, an order from the federal government led to state action. In *Preseault,* an order by the ICC occurred before the city of Burlington physically occupied the land. In *Hendler,* the EPA issued an order that authorized the state of California to enter upon the land and establish monitoring wells. No such order was issued here.

Finally, California's passage of section 22960 was not enacted for the benefit of the federal government or all Americans. As discussed *supra,* California enacted restrictions on the placement of tobacco vending machines for two reasons: to vigorously enforce its *own* law prohibiting

---

**3.** California's legislature derives its power and authority to enact laws from its own constitution. *See* Cal. Const. art. IV, § 1 ("The legislative power of this State is vested in the California Legislature which consists of the Senate and Assembly, but the people reserve to themselves the powers of initiative and referendum.").

tobacco sales to persons under 18 (with the goal of reducing and eventually eliminating those sales and underage smoking), and to ensure compliance with section 300x–26 and thus obtain federal funds for its own substance abuse prevention and treatment programs. Thus, California's enactment of section 22960 was for the benefit of its own citizens, not for the benefit of Americans generally.

 We therefore conclude that B & G's property was not taken by the federal government, either by Congress's enactment of section 300x–26 in 1992, by HHS's publication of the NPRM in 1993, or by HHS's promulgation of section 96.130 in 1996. Congress's enactment of section 300x–26 did not constitute a taking of B & G's "property" because section 300x–26 did not place federal restrictions on the location of tobacco vending machines. Rather, section 300x–26 only conditioned a state's receipt of funds on that state's prohibition of tobacco sales and distribution to persons under 18. As discussed *supra*, California already had such a prohibition when section 300x–26 was enacted. The enactment of section 300x–26 thus did not by itself affect B & G's vending machine contracts. Moreover, the NPRM published in 1993 only suggested that states ban or place restrictions on tobacco vending machines in order to limit youth access to tobacco. These suggestions were not rules of law affecting B & G's contracts. Lastly, HHS's promulgation of section 96.130 in 1996 also did not constitute a taking for the same reason that Congress's enactment of section 300x–26 did not. Section 96.130 merely echoed and clarified section 300x–26's requirements; it did not ban or place restrictions on the locations of tobacco vending machines.

In sum, it was California's decision to create restrictions on the placement of tobacco vending machines, not the federal government's. Congress may have provided the bait, but California decided to bite. If California's enactment of section 22960 interfered with B & G's vending machine contracts, it was not the responsibility of the federal government. The Court of Federal Claims properly granted the government's motion for summary judgment on B & G's takings claim.

## CONCLUSION

Because California did not act as an agent of the United States when it enacted a law banning tobacco vending machines from establishments that were not licensed to sell alcoholic beverages, the United States is not liable for California's interference with B & G's tobacco vending machine contracts with such establishments; it did not "take" B & G's alleged property rights. Accordingly, the Court of Federal Claims properly granted the government's motion for summary judgment. The decision of that court is therefore

*AFFIRMED.*