# United States Court of Appeals for the Federal Circuit

---

**RUSSELL B. WELTY, SHARON A. STANLEY, LINDA K. FULTON,**
*Plaintiffs-Appellants*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2018-1558

---

Appeal from the United States Court of Federal Claims in No. 1:16-cv-01017-PEC, Judge Patricia E. Campbell-Smith.

---

Decided: June 14, 2019

---

RICHARD MAGEE, JR., The Magee Law Firm LLC, Clayton, MO, argued for plaintiffs-appellants.

JOAN M. PEPIN, Environment and Natural Resources Division, United States Department of Justice, Washington, DC, argued for defendant-appellee. Also represented by ERIC GRANT, JEFFREY H. WOOD.

---

Before DYK, MAYER, and BRYSON, *Circuit Judges.*

MAYER, *Circuit Judge*.

Russell B. Welty, Sharon A. Stanley, and Linda K. Fulton (collectively, "the Landowners") appeal the judgment of the United States Court of Federal Claims dismissing their complaint alleging that the United States took their property without just compensation by requiring or approving the construction and maintenance of a levee on a farm adjacent to their property. *See Welty v. United States*, 135 Fed. Cl. 538, 550–51 (2017) ("*Welty I*"). We affirm.

## I. BACKGROUND

The Landowners inherited a farm ("the Welty Farm") as joint tenants with the right of survivorship when their mother died. The Welty Farm, which is located in Cape Girardeau County, Missouri, is bordered on the west by the Whitewater River. Terry Givens purchased a farm ("the Givens Farm") bordering the Welty Farm to the south in 1998. The Welty Farm is directly upstream from the Givens Farm.

Givens maintains a drainage ditch and levee system on portions of his property near the Whitewater River. Since 1998, the Givens Farm has been enrolled in the Conservation Reserve Program ("CRP"). *See* 16 U.S.C. § 3831. Under the CRP, landowners can enter into contracts to remove environmentally sensitive land from agricultural production and to manage it in accordance with an approved conservation plan. *See* 7 C.F.R. § 1410.20. In exchange, participants in the CRP are eligible for monetary compensation from the United States Department of Agriculture ("USDA"). *Id.* § 1410.21. Under the CRP, conservation plans for land adjacent to streams or rivers commonly require the maintenance of a "filter strip," which is defined as "a strip or area of vegetation adjacent to a body of water the purpose of which is to remove nutrients, sediment, organic matter, pesticides, and other pollutants from surface runoff and subsurface flow." *Id.* § 1410.2(b).

In 2014, the Landowners filed suit against Givens in Missouri state court, alleging that the levee and ditch system that he built on his property had resulted in the drainage of wetlands on the Welty Farm. *See Welty v. Givens*, No. ED106864, slip op. at 2–5 (Mo. Ct. App. Apr. 2, 2019) (non-precedential memorandum supplementing order affirming judgment) ("*Welty II*"). They asserted, moreover, that Givens' levee and ditch system had "caused unnatural flooding," which had rendered the Welty Farm "unfit for cultivation." *Id.* at 5.

Givens moved to dismiss, asserting that under Missouri law a landowner has the right "to make a reasonable use of his land even though the flow from surface waters is thereby altered and causes more harm to others." Supplemental App. ("S.A.") 32. Givens also submitted an affidavit stating that his CRP contracts with the USDA required him to maintain a filter strip around the perimeter of his farm. *Id.* at 28–29. According to Givens, the function "of the filter strip is to protect bank erosion of the Whitewater River, provide wildlife habitat and serve as a buffer and filter between the farmland and the Whitewater River." *Id.* at 29. Givens asserted, moreover, that the removal of the levee on his property would "substantially eliminate and destroy the filter strip running along it," resulting in the breach of his CRP contracts. *Id.*

The Missouri Court of Appeals recently affirmed the dismissal of the Landowners' tort action against Givens. *See Welty II*, slip op. at 8–12. The court explained that under Missouri law "each possessor is legally privileged to make a reasonable use of his land," *id.* at 7, and that it could not "say Givens' use of [his] ditch and levee [was] unreasonable [or] inappropriate to defend against surface water," *id.* at 8. The court concluded, moreover, that the Landowners' cause of action was time-barred since "Givens' levee and ditch were constructed and known to [the Landowners] sixteen years before they filed their petition,

and eleven years after the statute of limitations had run." *Id.* at 11–12.

In August 2016, the Landowners filed suit against the United States in the Court of Federal Claims. They alleged that the government had taken their property without just compensation by "requiring and/or approving the construction and maintenance" of the levee on Givens' property. J.A. 23. According to the Landowners, the "positioning" of Givens' levee was such that it caused upstream flooding and the "permanent loss of all beneficial use of the Welty Farm as productive agricultural land." *Id.* at 29–30.

On December 8, 2017, the Court of Federal Claims granted the government's motion to dismiss the Landowners' complaint for failure to state a claim upon which relief could be granted. *See Welty I*, 135 Fed. Cl. at 550–51. Although the court rejected the government's contention that the Landowners' complaint was time-barred,[1] *id.* at 549, it determined that the Landowners had failed to allege facts sufficient to demonstrate that the government, as opposed to Givens, was responsible for the alleged flooding on their farm, *id.* at 550–51. The court explained that no taking occurs when the challenged activities "are those of private parties, not the government," and that the "voluntary nature" of the CRP contracts between Givens and the USDA was "fundamentally at odds with the coercion required to support a takings claim." *Id.* According to the court, "[t]o the extent any of the alleged damage to [the Landowners'] property [was] related to modifications made or

---

[1]    On appeal, the government does not challenge the Court of Federal Claims' decision to deny its motion to dismiss the Landowners' complaint as untimely. *See Welty I*, 135 Fed. Cl. at 549 ("After careful consideration of this conflict, the court concludes that the best course is to . . . take [the Landowners'] allegations relating to the stabilization doctrine as true for purposes of determining jurisdiction.").

maintenance performed for purposes of complying with the terms of the CRP, that damage is a result of Givens'[] voluntary decision to participate in that program, not the result of any actions required by or coerced by [the government]." *Id.* at 551.

The Landowners then filed a timely appeal with this court. We have jurisdiction under 28 U.S.C. § 1295(a)(3).

## II. DISCUSSION

### A. Standard of Review

We review *de novo* a decision by the Court of Federal Claims to dismiss a complaint for failure to state a claim upon which relief can be granted. *See Boyle v. United States*, 200 F.3d 1369, 1372 (Fed. Cir. 2000). "A motion to dismiss under Court of Federal Claims Rule 12(b)(4) for failure to state a claim upon which relief can be granted is appropriate when the facts asserted by the claimant do not entitle him to a legal remedy." *Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir. 2002).

### B. Fifth Amendment Takings

To maintain a cognizable claim for a Fifth Amendment taking, a plaintiff must establish that he possessed an enforceable property right that was taken by the government for public purposes without just compensation. *See, e.g., Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1014–19 (1992). "A compensable taking can occur not only through the government's physical invasion or appropriation of private property, but also by government regulations that unduly burden private property interests." *Huntleigh USA Corp. v. United States*, 525 F.3d 1370, 1378 (Fed. Cir. 2008) (footnote and citations omitted).

"The paradigmatic taking requiring just compensation is a direct government appropriation or physical invasion of private property." *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 537 (2005); *see United States v. Pewee Coal Co.*,

341 U.S. 114, 115–17 (1951) (concluding that a taking occurred when the government seized and operated a private party's coal mines). Here, the Landowners do not allege that the United States directly appropriated their property. Nor do they point to any provision in the CRP contracts between Givens and the USDA that explicitly requires Givens to maintain a levee on his farm. Instead, the Landowners' claim of injury from governmental action is significantly more "attenuated." *Air Pegasus of D.C., Inc. v. United States*, 424 F.3d 1206, 1215 (Fed. Cir. 2005). Specifically, they assert that they are entitled to compensation for a Fifth Amendment taking because "the government coerced Mr. Givens into participating in the [CRP] by the lure [of] monetary compensation even though [a result] of participation would be the taking [of] a flowage easement across [the Welty Farm]." Appellants' Br. 12. In essence, the Landowners contend that the government should be held liable because: (1) the CRP contracts between Givens and the USDA require the maintenance of a filter strip on portions of the Givens Farm near the Whitewater River; (2) Givens asserts that the removal of his levee would cause damage to, or the destruction of, this filter strip; and (3) Givens' levee causes the Whitewater River periodically to flood the Welty Farm, rendering it unfit for cultivation. J.A. 22–31.

We do not find this argument persuasive. Under certain circumstances, a viable takings claim can arise "when the government instigates action by a third party." *A & D Auto Sales, Inc. v. United States*, 748 F.3d 1142, 1153 (Fed. Cir. 2014). In this regard, actions of a third party that harm a plaintiff's private property rights can be attributed to the United States "if the third party [was] acting as the government's agent or the government's influence over the third party was coercive rather than merely persuasive." *Id.* at 1154; *see Preseault v. United States*, 100 F.3d 1525, 1551 (Fed. Cir. 1996) (en banc) ("[W]hen the Federal Government puts into play a series of events which result in a

taking of private property, the fact that the Government acts through a state agent does not absolve it from the responsibility, and the consequences, of its actions."). Here, however, the Landowners have not pled facts plausibly establishing either that Givens was acting as an agent of the government when he constructed and maintained his levee or that Givens' actions related to the levee were the product of coercion by the USDA.

C. Agency

"An agency relationship may exist where [a] third party is hired or granted legal authority to carry out the government's business." *A & D Auto Sales*, 748 F.3d at 1154; *see also Brubaker Amusement Co. v. United States*, 304 F.3d 1349, 1360 (Fed. Cir. 2002) ("[A]n agency relationship results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other to so act." (internal quotation marks omitted)). The Landowners have pled no facts showing that the government hired Givens to build or maintain the levee on his farm or that it otherwise required or directed him to construct the levee on its behalf.[2] *See Navajo Nation v. United States*, 631 F.3d 1268, 1276 (Fed. Cir. 2011) (concluding that an Indian tribe was not acting as an agent of the federal government since it "was not acting under the direction or control of the United States . . . or for its benefit"); *Casa de Cambio Comdiv S.A. v. United States*, 291 F.3d 1356, 1363 (Fed. Cir. 2002) (concluding that no taking occurred "[b]ecause the government did not direct [the third party] to take action against [the plaintiff], and because [the third party] did not act as the alter ego or agent of the government"). To the contrary, there is no provision in the CRP contracts

---

[2]    Givens asserts that part of the levee was present on his farm at the time of purchase, but that he "added" to it after he acquired his property.  S.A. 29.

between Givens and the USDA requiring the construction or maintenance of a levee. Instead, these contracts only require the establishment and maintenance of a filter strip, designed to protect the Whitewater River from agricultural pollutants. S.A. 40, 99.

Landowners who enroll their properties in the CRP are eligible for financial assistance from the USDA. *See* 7 C.F.R. § 1410.21. But Givens' alleged receipt of financial compensation for participating in the CRP is insufficient, standing alone, to show that he was acting as an agent of the United States when he constructed and maintained his levee, particularly given that, as noted above, the CRP contracts only mandate the establishment of a filter strip and not a levee. The government often attaches conditions and restrictions on the receipt of federal financial assistance, *see United States v. Orleans*, 425 U.S. 807, 815–16 (1976), but such conditions and restrictions do not necessarily create any form of an agency relationship, *see B & G Enters., Ltd. v. United States*, 220 F.3d 1318, 1323–24 (Fed. Cir. 2000) (concluding that "California did not act as an agent of the United States by enacting . . . vending machine restrictions" even though it enacted those restrictions as part of an effort to obtain a block grant from the Department of Health and Human Services); *see also Griggs v. Allegheny Cty.*, 369 U.S. 84, 88–90 (1962) (concluding that a county government, not the federal government, was liable for the taking of an air easement over a plaintiff's property for use by a county airport, notwithstanding the fact that the county airport was funded in part by a federal grant conditioned on compliance with federal regulations); *D.R. Smalley & Sons, Inc. v. United States*, 372 F.2d 505, 507 (Ct. Cl. 1967) (holding that the conditional grant of federal funds to the State of Ohio for highway projects did not make it an agent of the United States for purposes of liability related to those projects).

The Landowners point to the fact that Givens submitted an affidavit, in connection with the Missouri state court

tort action, *see Welty II*, slip op. at 8–12, stating that the dismantling of his levee would result in a breach of his CRP contracts with the USDA because it would "substantially eliminate and destroy the filter strip running along [the levee]." S.A. 29. Even accepting this statement as true, however, the fact remains that the government did not, pursuant to the CRP contracts, specifically mandate the construction or maintenance of a levee on the Givens Farm. Nor is there any credible allegation that the USDA otherwise required the particular levee and ditch configuration that Givens uses on his farm, the configuration which, according to the Landowners, is responsible for upstream flooding across the Welty Farm. *See Welty II*, slip op. at 5, 8–11; J.A. 9–10, 27–30. In short, the Landowners have pled no facts suggesting that the alleged flooding of their farm was a direct and intended result of the government's actions with respect to Givens. *See A & D Auto Sales*, 748 F.3d at 1154 (explaining that a takings claim may arise when a plaintiff's injuries are the "direct and intended" result of governmental actions directed at third parties); *see also Air Pegasus*, 424 F.3d at 1215 (explaining that a takings claim does not arise in situations in which there is only an "attenuated" causal link between a plaintiff's injury and governmental actions directed at a third party); *Casa de Cambio*, 291 F.3d at 1361 ("Under decisions of the Supreme Court and this court, a compensable taking does not occur unless the government's actions on the intermediate third party have a 'direct and substantial' impact on the plaintiff asserting the takings claim.").

D. Coercion

Nor have the Landowners pled facts sufficient to show that Givens was "coerced" into constructing and maintaining his levee.[3] In many instances, "[t]he line between

---

[3] We reject the Landowners' contention that we should remand this case to the Court of Federal Claims

coercion (which may create takings liability) and persuasion (which does not create takings liability) is highly fact-specific and hardly simple to determine." *A & D Auto Sales*, 748 F.3d at 1154. Here, however, the Landowners do not allege facts plausibly suggesting that the USDA compelled Givens to construct or maintain a levee on his farm. The fact that the USDA provides financial incentives for participating in the CRP is insufficient, standing alone, to show that Givens' construction and maintenance of his levee was the product of government coercion. *See B & G Enters.*, 220 F.3d at 1325 ("[I]t was California's decision to create restrictions on the placement of tobacco vending machines, not the federal government's. Congress may have provided the bait, but California decided to bite."); *Langenegger v. United States*, 756 F.2d 1565, 1572 (Fed. Cir. 1985) (concluding that the United States was not liable for the expropriation of the property of U.S. citizens by El Salvador given that its influence over the expropriation was not coercion but "'friendly' persuasion").

## III. CONCLUSION

Accordingly, the judgment of the United States Court of Federal Claims is affirmed.

**AFFIRMED**

---

with instructions to grant them leave to amend their complaint to allege that Givens was coerced into entering into the CRP contracts. Because the Landowners did not request leave to amend their complaint when they were before the Court of Federal Claims, that issue is forfeited on appeal. *See, e.g.*, *San Carlos Apache Tribe v. United States*, 639 F.3d 1346, 1355 (Fed. Cir. 2011) (explaining that an argument not raised "before the Court of Federal Claims . . . is waived on appeal"). Significantly, moreover, the Landowners have failed to explain how any amendments could cure the deficiencies in their complaint.