[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-11036

_____

JOHN STEPHEN RAVAN,

Plaintiff-Appellant,

*versus*

SHERIFF CULLEN TALTON,
Houston County, et al.,

Defendants,

CORPORAL ALTHEA ADDISON JACKSON,
Houston County Detention Center,
DOCTOR ROHL,
Houston County Detention Center,
NURSE PRACTITIONER BROOM,

Houston County Detention Center,
NURSE JEANNIE VAUGHN,
ASSISTANT NURSE RONNIE SPRAUGE, et al.,

                                            Defendants-Appellees.

————————————

Appeal from the United States District Court
for the Middle District of Georgia
D.C. Docket No. 5:19-cv-00161-TES-TQL

————————————

Before ROSENBAUM, LAGOA, Circuit Judges, and WETHERELL,[*] District Judge.

PER CURIAM:

While John Ravan was incarcerated, medical staff changed his medication, causing him to suffer an allergic reaction that was immediately obvious and inflicted severe, irreversible damage. Besides that, prison guards allegedly refused to give Ravan grievance forms so that he could ask for better medical treatment, and they transferred him out of medical housing. Separately, food-service workers gave Ravan, who is Jewish, non-Kosher meals (and refused

———————————

[*] The Honorable T. Kent Wetherell II, U.S. District Judge for the Northern District of Florida, sitting by designation.

to provide Kosher meals) on a number of occasions. Ravan sued (1) the doctor and nurses who inadequately treated him, (2) the prison officers who prevented him from requesting medical treatment, and (3) the food-service workers and the company who served him non-Kosher meals. After a thorough review of the record and with the benefit of oral argument,[1] we affirm in part, vacate in part, and reverse in part.

## I.   BACKGROUND

### A. Factual Background[2]

When Ravan entered the Houston County Detention Center on February 17, 2019, he had a preexisting brain tumor and poor vision. Shortly thereafter, Dr. Peter Wrobel, along with Nurses Rawni Sprague, Jeannie Vaughn and others[3] (collectively, the

---

[1] We appointed Nicole Bronnimann and Joshua Mitchell to represent Ravan on appeal. We thank both for their service to the court.

[2] Because the district court dismissed Ravan's claims against the medical defendants and the food-service defendants before summary judgment, for purposes of this appeal, we consider the allegations in Ravan's amended complaint as true. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). The actual facts may or may not be as alleged. Because the district court granted summary judgment for the officer defendants, we consider the facts as to them based on the evidence, viewing all conflicts in the light most favorable to Ravan as the non-movant. *Tolan v. Cotton*, 572 U.S. 650, 651 (2014). So again, the facts may or may not be as set forth.

[3] Ravan also named Physician's Assistant Sharon Broome, Nurse Chiquita Cox, Nurse Shakira Turner, and Nurse Shannon Wingfield.

"medical defendants"), changed Ravan's medications—without doing precautionary bloodwork—causing him to have an allergic reaction.

The allergic reaction manifested itself as "Stevens-Johnson syndrome" or "toxic epidermal necrolysis" ("SJS/TEN"). SJS/TEN is a single condition that covers a spectrum, with SJS representing the relatively less severe form and TEN representing the relatively more severe form. Either way, SJS/TEN is a "severe skin reaction" that causes "the skin . . . to blister and peel, forming very painful raw areas called erosions that resemble a severe hot-water burn. The skin erosions usually start on the face and chest before spreading to other parts of the body. In most affected individuals, the condition also damages the mucous membranes, including the lining of the mouth and airways[.]" "SJS/TEN often affects the eyes as well, causing irritation and redness of the conjunctiva, which are the mucous membranes that protect the white part of the eye and line the eyelids, and damage to the clear front covering of the eye (the cornea) . . . . About 10 percent of people with [SJS] die from the disease, while the condition is fatal in up to 50% of those with [TEN]." Survivors can suffer long-term effects like hair loss, abnormal growth or loss of fingernails, impaired taste, difficulty urinating, and genital abnormalities.

Ravan said that, while Dr. Wrobel diagnosed him with SJS/TEN, he was kept in a solitary medical cell for weeks with bleeding and blistered legs, mouth, and genitals, with no treatment other than Tylenol and mouthwash. Ravan's health continued to

deteriorate, and at one point, Ravan's mucous membrane came out of his eye. In response, a jail officer gave him only a plastic evidence bag to put the mucous membrane in. Ravan also developed a lump on his testicles, but when Ravan asked Dr. Wrobel to exam it, the doctor said, "I don't want to see or feel your balls again."

Still seeking help, Ravan asked Deputy Laura Freeman and Corporal Althea Jackson ("the officer defendants") more than fifteen times for "grievance form[s] to address his medical needs and issues of bleeding sores"—but they refused every time. "After [three] days of begging for a grievance to complain of . . . lo[]sing [his] vision more each day, and the sores in [his] mouth, legs and eye," Ravan said, Officers Jackson and Freeman moved him out of medical housing into general-population housing knowing that Ravan was in danger of being accidentally struck and killed there.

While in the detention center, Ravan sought Kosher food in accordance with his Jewish faith. He had to "repeatedly" get shift supervisors to fix his meals because of contamination.[4] At one point, when he asked kitchen staff to remake his food, the staff member refused, stating, "I ain't doing nothing else." According to Ravan's records, during his period of incarceration, he was denied

---

[4] At all material times, Summit Food Service, LLC ("Summit Food Service") was the company that furnished food services for the Houston County Detention Center. The operative complaint identifies Summit Food Service and two of its employees—Gene Thomas and Michelle Wheeler—as defendants. These parties are hereinafter referred to as the "food-service defendants."

Kosher dining on at least seven occasions:  April 4, April 5 (the p.m. snack), April 6 (breakfast and dinner), April 7 (breakfast), April 9, and April 11.

Upon being released from prison, Ravan suffered from blindness, was wheelchair-bound because of seizures, and was told he had to have a testicle removed.

### B.  Procedural History

While incarcerated, Ravan sued (1) the medical defendants, (2) the officer defendants, and (3) the food-service defendants.  As to the medical defendants, Ravan alleged that they had provided inadequate care in violation of the Eighth Amendment.  Ravan said the officer defendants had prevented him from receiving care and moved him out of medical housing—also in violation of the Eighth Amendment.  And finally, about the food-service defendants, Ravan alleged that their refusal to provide Kosher meals violated both the First Amendment and constituted a substantial burden on his religious practice in violation of the Religious Land Use and In-stitutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc *et seq.* Ravan's original complaint was verified under penalty of perjury and had attached to it a ten-page log of events between February and April, as well as grievances he had submitted to the jail.  The combined document was about 120 pages.

The magistrate judge ordered Ravan to refile his complaint on the Middle District of Georgia's standard § 1983 form and warned, in bold, that the new complaint would replace the original complaint and that the magistrate judge would consider only the

22-11036                 Opinion of the Court                    7

allegations in the new complaint.  In response, Ravan asked for a copy of his original complaint because his copies had disappeared during his transfer between facilities.  The magistrate judge gave Ravan more time to refile and a free copy of the complaint but said that Ravan had to pay for copies of the "voluminous" attachments—about 80 pages.

Ravan filed an amended complaint but did not resubmit the grievances and daily log attached to the original complaint.[5]  Because Ravan proceeded while incarcerated, the magistrate judge

---

[5] Ravan argues that the grievances and daily log attached to the original complaint should be considered along with the operative complaint.  We agree.  At the pleading stage, courts may consider (or "incorporate by reference") documents that are not attached to the complaint so long as those documents are (1) referred to in the complaint, (2) central to the plaintiff's claims, and (3) of undisputed authenticity. *Hi-Tech Pharms., Inc. v. HBS Int'l Corp.*, 910 F.3d 1186, 1189 (11th Cir. 2018); *accord Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005).  Here, no party disputes the centrality or authenticity of Ravan's grievances and daily log.  The only dispute is whether the operative complaint adequately refers to those documents for purposes of incorporation.  It does.  The operative complaint (1) summarizes the contents of Ravan's daily log, alleging that he went "weeks . . . with no help or medication" for his medical symptoms and that he was denied Kosher meals "over and over"; (2) makes broad references to the documents that Ravan previously submitted to the court; and (3) alleges that his grievances went ignored by prison staff.  Construing these allegations liberally, and considering that Ravan submitted his only copy of the daily log with his original complaint and the magistrate judge denied his request for a free copy of the daily log so he could resubmit it with his amended complaint, we are satisfied that the operative complaint incorporates the grievances and daily log that Ravan attached to the original complaint.

"screened" Ravan's amended complaint under 28 U.S.C. § 1915A. As to the medical defendants, the magistrate judge found that Ravan's allegations described, at most, negligence—but not deliberate indifference—and dismissed those claims. But the magistrate judge allowed Ravan's claims against the officer defendants and the food-service defendants to proceed.

The food-service defendants moved to dismiss. They argued that Summit Food Service was not liable because Ravan had not alleged a policy of violating religious rights. They continued that (1) Ravan had not stated a claim against the individual defendants because he did not attribute specific acts to them, (2) the individual defendants were entitled to qualified immunity on the First Amendment claim, (3) RLUIPA did not provide for monetary damages, and (4) Ravan's claims for injunctive and declaratory relief were moot because he had been released from the jail.

While the motion to dismiss was pending, the officer defendants moved for summary judgment. Both Officers Freeman and Jackson denied that they had ever refused Ravan grievance forms. And they contended that, because Ravan was seen by medical professionals, they thought (and were entitled to think) that the medical professionals were adequately treating Ravan. They also said that they moved Ravan at the recommendation of the medical staff and therefore were justified in believing that the move did not present a risk of harm. The officer defendants also pointed out that, in any event, only Officer Jackson, not Officer Freeman, had the authority to authorize a move and Ravan didn't suffer any harm

from the transfer. Finally, they argued that they were entitled to qualified immunity because there was no case clearly establishing that their conduct was unconstitutional.

On February 2, 2021, the magistrate judge recommended granting both the motion to dismiss and the motion for summary judgment. As to the former, the magistrate judge recommended dismissing Summit Food Service because Ravan had not alleged a policy or custom of violating rights. And as to the individual food-service defendants, the magistrate judge concluded that Ravan had not made any specific allegations about their conduct. On the RLUIPA claims, the magistrate judge agreed that monetary damages were not available and Ravan's claims for injunctive and declaratory relief were moot. The magistrate judge also recommended entering summary judgment for the officer defendants because the officers were entitled to rely on the medical staff to give Ravan sufficient care.

On February 19, 2021, Ravan moved for leave to amend.[6] The motion wasn't docketed until March 8. In the meantime, on February 26, the district court adopted the magistrate judge's report and entered judgment against Ravan on all claims. When the magistrate judge received the motion for leave to amend, he

---

[6] Under the "prison mailbox rule," a document is considered filed "on the date it [was] delivered to prison authorities for mailing." *Daniels v. United States*, 809 F.3d 588, 589 (11th Cir. 2015). Because Ravan gave his motion to prison authorities on February 19, we consider that as the date of filing.

denied the motion as moot because judgment had been entered. Ravan now appeals.

## II.    STANDARDS OF REVIEW

We review *de novo* a district court's order granting a motion to dismiss for failure to state a claim. *Boyle v. City of Pell City*, 866 F.3d 1280, 1286 (11th Cir. 2017).

We also review the grant or denial of summary judgment *de novo*. *B&G Enters., Ltd. v. United States*, 220 F.3d 1318, 1322 (11th Cir. 2000). In so doing, we view all evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party—here, Ravan. *St. Charles Foods, Inc. v. America's Favorite Chicken Co.*, 198 F.3d 815, 819 (11th Cir. 1999).

A party that fails to properly object to a magistrate judge's report and recommendation, after being given notice of the period for objecting and the consequences of failing to do so, "waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1. In such cases, we may review the district court's adoption of a recommendation "for plain error if necessary in the interests of justice." *Id.*; *accord Harrigan v. Metro Dade Police Dep't Station #4*, 977 F.3d 1185, 1191 (11th Cir. 2020); *see also United States v. Perkins*, 787 F.3d 1329, 1343–44 (11th Cir. 2015) (differentiating between objected-to and unobjected-to portions of the adopted recommendation for purposes of review). Under the civil plain-error standard,

22-11036                Opinion of the Court                11

we will consider an issue not properly raised in the district court "if it involves a pure question of law, and if refusal to consider it would result in a miscarriage of justice." *Roy v. Ivy*, 53 F.4th 1338, 1351 (11th Cir. 2022) (quoting *Burch v. P.J. Cheese, Inc.*, 861 F.3d 1338, 1352 (11th Cir. 2017)).

## III.    DISCUSSION

We proceed in three parts. *First*, we explain why at least some of Ravan's claims against the food-service defendants should have survived their motion to dismiss. *Second*, we discuss why the district court erred in granting summary judgment for the officer defendants. And, *third*, given our rulings, we explain why the district court must reconsider whether to give Ravan leave to amend his claims against the medical defendants—namely, because this case is not moot.

### A. Food-service Defendants

Ravan argues that the district court erred in dismissing his First Amendment and RLUIPA claims against the food-service defendants. We agree in part.[7] As to Summit Food Service, the district court properly dismissed the First Amendment claim but not the RLUIPA claim. The reverse is true as to the individual

---

[7] Because Ravan objected only conclusorily to the magistrate judge's report and recommendation that the food-service defendants be dismissed, we review for plain error. *See* 11th Cir. R. 3-1.

defendants: the district court properly dismissed the RLUIPA claim but not the First Amendment claim.

We'll start with the First Amendment claims and then discuss the RLUIPA claims.

### 1. First Amendment

To state a valid free-exercise claim, a plaintiff "must allege that the government has impermissibly burdened one of his 'sincerely held religious beliefs.'" *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1294 (11th Cir. 2007) (quoting *Frazee v. Ill. Dep't of Emp. Sec.*, 489 U.S. 829, 834 (1989)). Under § 1983, municipalities are liable for only their own conduct. So to state a claim against a municipality, a plaintiff must identify a policy or custom that caused his injury, or ratification of, or acquiescence in, an unconstitutional decision by a subordinate. *Hoefling v. City of Miami*, 811 F.3d 1271, 1279 (11th Cir. 2016) (discussing the three theories of municipal liability). In other words, municipalities cannot liable under a theory of *respondeat superior*. *Id.*

As to the individual defendants, we think that Ravan has plausibly stated a claim that their actions impermissibly burdened his sincerely held religious beliefs. Keeping in mind the liberal pleading standard afforded to pro se litigants, Ravan alleged that he was Jewish and required, as part of his faith, Kosher meals. Ravan alleged a number of instances where the individual defendants either refused to provide him Kosher meals in the first instance or refused to remake Kosher meals after contamination. He alleged

that the individual defendants "over and over" denied him religious food.

The individual defendants have three responses—all unpersuasive. *First*, they argue that Ravan didn't properly attribute acts to them individually. But Ravan named two food-service workers as defendants so it is plausible to attribute the alleged actions of food-service workers to those two named workers. Given the liberal standards to which we hold pro se pleadings, we think Ravan did just enough to state a claim.

*Second*, the individual defendants argue that depriving Ravan of a handful of meals over a period of months doesn't constitute an impermissible burden on his religion. But the number of missed meals is not necessarily determinative because being denied three Kosher meals in a row might be more substantial of a burden on religion being denied three meals in three months, and for a diabetic, the denial of one meal may be a substantial burden. And the record is (at best) muddled about the number and timing of Kosher meals that Ravan was denied. Ravan alleged in his complaint that he was denied meals "over and over." In response, the individual defendants argue that Ravan's grievances and log—attached to his original complaint—control and show that Ravan was denied Kosher meals only five times in five months. But other places in the record bely that interpretation. For instance, Ravan alleges that over a five-day period, he was effectively denied five meals. And he wrote that, on April 1, his Kosher diet was "abruptly stopped," and though he submitted grievances for "almost five

weeks," he never got a reply.  Given this ambiguity, we think that Ravan has stated a plausible claim that his religious practice was impermissibly burdened.

*Third*, the individual defendants argue that they are entitled to qualified immunity.  In their view, "a reasonable food service worker in a county jail would not have known in April 2019 that giving an inmate five non-kosher meals out of 559 total meals over 206 days would have constituted a substantial burden on the inmate's First Amendment rights."  The district court didn't decide whether the individual defendants would be entitled to qualified immunity.  "Because the district court did not reach the question . . . [it] is not properly before us and must be remanded for the district court's consideration."  *Nyland v. Moore*, 216 F.3d 1264, 1267 (11th Cir. 2000).

But we reach a different conclusion as to Summit Food Service.  To state a claim against Summit Food Service, Ravan had to plead that the company[8] had a custom or policy of not providing Kosher meals, or acquiesced in or ratified its employees' doing so.  *Hoefling*, 811 F.3d at 1279.  Ravan has not done so.  His complaint is wholly devoid of any allegations as to Summit Food Service's policies or customs, or any facts that would allow a reasonable trier of fact to infer that any final policymaker ratified or acquiesced in

---

[8] Summit Food Service is not a municipality, but it assumes—for the sake of this appeal—that it is a state actor because it feeds incarcerated people.  We therefore assume it is a state actor for purposes of this appeal.

the individual defendants' actions.  Accordingly, the district court properly dismissed Ravan's First Amendment claim against Summit Food Service.

## 2.  RLUIPA

Ravan also challenges the dismissal of his claims against both the individual defendants and Summit Food Service under RLUIPA.  In Ravan's view, the denial of his meals constituted a "substantial burden" on his religious exercise, in violation of that statute, and the district court erred in deciding that he was not entitled to monetary damages.  We agree on the latter point and therefore reverse as to Summit Food Service only.

RLUIPA prohibits policies that "substantially burden" religious exercise except where a policy "(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc–1(a).  Once a plaintiff proves that a challenged practice substantially burdens religious exercise, the burden shifts to the defendant to show that the policy is the least restrictive means of furthering a compelling government interest.  *Id.*; *see also id.* § 2000cc-2(b).

Because RLUIPA was passed under Congress's Spending Power, we've explained, only those who receive federal funding are liable for violating it. *Smith v. Allen*, 502 F.3d 1255, 1272 (11th Cir. 2007) *overruled in part on other grounds by Hoever v. Marks*, 993 F.3d 1353 (11th Cir. 2021) (en banc).  Accordingly, only institutions that receive federal funds—not the individual employees of

those institutions—are subject to liability. *Id.* at 1275. RLIUPA provides that the complaining party, if successful, may obtain "appropriate relief against a government." *Id.* at 1269 (citing 42 U.S.C. § 2000cc-2(a)). We've concluded that "appropriate relief" includes both monetary and injunctive relief. *Id.* at 1271.

The district court dismissed Ravan's claims because it concluded Ravan was not entitled to monetary damages under RLUIPA and his claims for injunctive relief were moot given his release from jail. On appeal, Raven concedes that his claims for injunctive and declaratory relief are moot because he has been released from the jail. But he says his claims for monetary damages are still viable. We agree. Under *Smith*, institutions that receive federal funding are liable for monetary damages for violating RLUIPA. *Id.* But individual defendants aren't. *Id.* We therefore reverse the dismissal of Ravan's claim against Summit Food Service and affirm the dismissal of Ravan's claims against the individual defendants.

The food-service defendants attempt to avoid this conclusion with two arguments. First, they say, denying Ravan Kosher meals did not constitute a substantial burden on his religious exercise. But given that the district court did not reach this question, we leave it to the district court to determine whether Ravan's deprivation (of however many meals he pleaded he lost) constituted a substantial burden. *Nyland*, 216 F.3d at 1267.

Second, the food-service defendants argue that Ravan did not plead that the jail received federal funding so he did not allege

a jurisdictional prerequisite. In response, Ravan attaches a spreadsheet showing that the Georgia Department of Corrections received federal funding during the year at issue. The food-service defendants reply that the spreadsheet shows only that the State of Georgia receives federal funding, not that Houston County Detention Center does, attaching a link to a list of state-run detention centers. These defendants did not make this argument to the district court, though they say they can make it for the first time on appeal because it goes to jurisdiction. But given our conclusions above, we decline to take judicial notice of either document; instead, the district court can consider the federal-funding issue in the first instance.

In sum, we affirm the dismissal of Ravan's First Amendment claim against Summit Food Service and Ravan's RLUIPA claims against the individual defendants but reverse the dismissal of Ravan's First Amendment claims against the individual defendants and Ravan's RLUIPA claim against Summit Food Service.

## B. Officer Defendants

Ravan also argues that the district court erred in entering summary judgment on his claims against the officer defendants for allegedly being deliberately indifferent to his serious medical needs. Ravan says that the officer defendants were deliberately indifferent when they allegedly (1) denied him access to grievance forms and

(2) moved him from medical housing to general-population housing. We agree in part.[9]

To establish a prima facie case for Eighth Amendment deliberate indifference, a plaintiff must show "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *McElligott v. Foley*, 182 F.3d 1248, 1254 (11th Cir. 1999). So such a claim includes two elements: (1) a serious medical need and (2) deliberate indifference to that need. *Id.*

The second element, deliberate indifference, has three subparts: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." *Farrow v. West*, 320 F.3d 1235, 1245 (11th Cir. 2003) (citation omitted). "[E]ven where medical care is ultimately provided, a prison official may nonetheless act with deliberate indifference by delaying the treatment of serious medical needs, even for a period of hours, though the reason for the delay and the nature of the medical need is relevant in determining what type of delay is constitutionally intolerable." *Id.* (alteration in original) (citation omitted). That said, "[a]n inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying

---

[9] Ravan objected to the magistrate judge's recommendation sufficiently to preserve his claims for appellate review. He said that the officer defendants moved him "continuously" from dorm to dorm "to keep [him] in imminent danger." He also complained that "the defendants" refused to get him proper treatment. Liberally construed, we think that Ravan did enough to preserve his claims.

22-11036                Opinion of the Court                19

medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed." *Hill v. Dekalb Reg'l Youth Ctr.*, 40 F.3d 1176, 1188–89 (11th Cir. 1994), *overruled in part on other grounds by Hope v. Pelzer*, 536 U.S. 730, 739 n.9 (2002). We've further explained that "[d]elay in medical treatment must be interpreted in the context of the seriousness of the medical need, deciding whether the delay worsened the medical condition, and considering the reason for delay." *Id.* Finally, to prevail, a plaintiff must show causation between the deliberate indifference and his injury. *Mann v. Taser Int'l., Inc.*, 588 F.3d 1291, 1306–07 (11th Cir. 2009).

The officer defendants do not contest that Ravan suffered from a serious medical need. They argue only that they did not act with subjective knowledge of a risk of serious harm by conduct that was more than mere negligence. We disagree.

### 1.   Denial of Grievance Forms

We conclude that Ravan has raised a genuine issue of material fact as to the denial of the grievance forms. Ravan swore, in a verified pleading, that he asked over fifteen times for grievance forms to address his medical needs—namely, bleeding sores in his mouth, body, and legs.[10]

---

[10] To be sure, the officers swear that they never denied Ravan these forms. But as we've explained, at summary judgment, we review conflicts in the evidence in the light most favorable to the nonmoving party. *Charles Foods, Inc.*, 198 F.3d at 819.

The officer defendants respond that the prison has two kinds of forms—"Medical Request" forms and grievance forms. Grievance forms, they say, wouldn't help a prisoner obtain medical treatment. But they concede that, if we read the complaint as referring to Medical Request forms, then there is a genuine issue of material fact. And given Ravan's sworn allegations—that he sought "a grievance form to *address his medical needs*"—we think a reasonable jury could find that Ravan was seeking a Medical Request form, not a grievance form. Alternatively, Ravan's sworn allegations can be read to mean that he was seeking to file grievance forms to complain to non-medical prison-management officials about the medical defendants' alleged failure to provide him with any "medical" treatment, since Ravan asserts that they gave him only Tylenol and mouth wash for his extreme medical problems.

Faced with this reality, the officer defendants respond that there is no evidence that their refusal (and the resulting delay) caused Ravan any harm. We disagree. To be sure, "[t]he tolerable length of delay in providing medical attention depends on the *nature* of the medical need and the *reason* for the delay." *Hill*, 40 F.3d at 1188 (emphasis in original & citation omitted). But here, Ravan swore that he "suffered hour by hour" from "bleeding sores in [his] mouth, body, [and] legs." Especially in light of the nature of SJS/TEN, those symptoms present a serious (and obvious) medical need and any delay in treatment caused Ravan to suffer additional pain. Rather than attempt to justify the delay, the officer defendants just contend that no delay occurred. That may prove true, but

22-11036                Opinion of the Court                21

given Ravan's sworn allegation that a delay occurred while he suffered—which we must view in his favor at this stage—we are left without any justification for the delay.

Finally, the officer defendants say that Ravan was receiving medical care on a daily basis and so they were justified in relying on those medical professionals to provide sufficient care. Indeed, they say, it would be perverse to require non-medical prison officials *not* to rely on physicians for fear of vicarious liability, citing *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004). But that is not what happened here. Instead—viewing the facts in the light most favorable to Ravan—Ravan received *no* care other than Tylenol and mouth wash, and Ravan was asking to receive medical care. In other words, Ravan was not asking the officer defendants to second-guess the care he was already provided; he was asking for treatment in the first instance.

The officer defendants are not entitled to qualified immunity. Any reasonable official would know that, if a detainee with bleeding sores all over his body asks for a medical-treatment form, he or she cannot deny the detainee access to medical care. *See Harris v. Coweta Cnty.*, 21 F.3d 388 (11th Cir. 1994) ("[I]t was clear [by 1994] that deliberate indifference could be inferred from an unexplained delay in treating a known or obvious serious medical condition.").

### 2. Movement out of Medical Housing

We come to a different conclusion as to Ravan's claims against the officers for transferring him from medical housing to

the general population. In the operative complaint, Ravan alleged that this transfer was deliberately indifferent to his serious medical needs because, with his brain tumor, if he was "struck in harm or by mistake it could kill" him. In fact, he swore, after he was moved, nurses asked their supervisors to get him moved back because "they knew by the professional training . . . [that] [Ravan] was in danger if struck or accidently hit."

The district court correctly entered summary judgment for the defendant officers because Ravan did not produce any evidence that moving him from medical housing to the general population caused any injury. *Mann*, 588 F.3d at 1306–07. To be sure, Ravan alleges that he suffered pain both before and after his transfer. But he doesn't allege (or prove) that *the transfer* caused him any harm in particular—much less the concern he alleged. That is, Ravan said that, if the officers transferred him to general population, he was in danger if he was struck in the head. But fortunately, he was not, so there is no injury for which to compensate. And even if the transfer was deliberately indifferent, it did not cause Ravan any injury. *Id. See also Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1584 (11th Cir. 1995) (explaining that the plaintiff had to show link between excessive risk of violence and injury).

In his brief, Ravan points to other harms he could have suffered, like that the "undoubtedly poorer sanitation" in the general population housing combined with his open skin sores could have produced infection. But Ravan did not make that allegation in his

operative or first amended complaint, nor support it with evidence. So we do not consider it here.

In sum, we reverse the grant of summary judgment for both officers as to the denial of the grievance forms but affirm for both officers on the movement claim.

## C. Medical Defendants

Finally, we turn to the medical defendants. Both sides spend much of their time on appeal debating the merits of Ravan's claims against the medical defendants. Because Ravan objected only conclusorily to the magistrate judge's recommendation that Ravan's claims be dismissed at the 1915A screening stage, we "may" review for civil plain error. *See* 11th Cir. R. 3-1 (providing that this Court may review for plain error if necessary in the interest of justice).

Here, we do not need to review for plain error—so we do not. As we have explained, after the district court dismissed Ravan's claims against the medical defendants, the magistrate judge denied Ravan's request for leave to amend as moot. He did so because the request was received after the district court entered judgment on all claims. Given our rulings here, this case is no longer moot. So we vacate the decision denying the motion to amend as moot, and we remand for consideration of whether Ravan is entitled to leave to amend.[11]

---

[11] Two miscellaneous points: *First*, to the extent that Ravan suggests that the judgment entered was not final because his claims were dismissed without prejudice, *see* Reply Br. at 10–11, he is mistaken. If this judgment were not

Finally, we note that the magistrate judge required Ravan to refile his complaint but denied him copies of the materials he submitted with his original complaint. It is, of course, best practice not to submit one's only copy of a document to the court. But given that Ravan was at the time a pro se prisoner suffering from a severe and potentially deadly disease, we encourage the magistrate judge to consider either giving Ravan a copy of the 80 or so pages he asked for or independently reviewing those documents (which are already in the record) as a part of Ravan's submission. As we have noted, courts may—and when appropriate in the interest of justice, should—consider documents that are referred to in the complaint, central to the plaintiff's claims, and of undisputed authenticity.

## IV.    CONCLUSION

In sum, we make the following rulings:

---

final, then we would not have jurisdiction over this appeal. *See* 28 U.S.C. § 1291. Even though Ravan's claims were dismissed without prejudice, they were dismissed involuntarily. The dismissal was therefore final and appealable. *Justice v. United States*, 6 F.3d 1474, 1481 (11th Cir. 1993) ("A plaintiff may appeal from an involuntary dismissal without prejudice."). *Second*, as we have explained, the motion was not moot anyway. Ravan gave his motion to prison officials on February 19, and, under the prison mailbox rule, its filing date was therefore February 19. *Daniels*, 809 F.3d at 589. The motion was therefore filed well before the district court entered judgment on February 26.

1. We vacate the dismissal of the medical defendants and remand for consideration of whether Ravan should be given leave to amend;

2. We affirm the dismissal of the First Amendment claim against Summit Food Service;

3. We reverse the dismissal of the First Amendment claims against the individual food-service defendants;

4. We affirm the dismissal of the RLUIPA claim against individual food-service defendants;

5. We reverse the dismissal of the RLUIPA claim against Summit Food Service;

6. We reverse the grant of summary judgment on the deliberate-indifference claim for denying grievance forms as to both Officers Jackson and Freeman;

7. We affirm the grant of summary judgment on the deliberate-indifference claim against Officers Jackson and Freeman for moving Ravan out of medical housing.

**AFFIRMED IN PART; VACATED IN PART; REVERSED IN PART.**